UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

        -against-                                       08-cr-0120 (LAK)

DAMON WADE,

                       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

> Jason M. Swergold
> Assistant United States Attorney
> PREET BHARARA
> UNITED STATES ATTORNEY

> Robert M. Baum
> Federal Defenders of New York, Inc.
> *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

On February 13, 2008, a federal grand jury in this district indicted Damon Wade on

one count of escape in violation of 18 U.S.C. §§ 751 and 4082(a).[1]  An arrest warrant was issued

---

[1]    *See* indict. [DI 1].  18 U.S.C. § 751(a) makes it a crime to escape from federal custody.  If confinement is by reason of conviction or an arrest on a felony charge (as here), the punishment is a fine and/or imprisonment for not more than five years.

18 U.S.C. § 4082(a) states that "[t]he willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title."

2

that same day.[2]

Wade was taken into federal custody by the U.S. Marshals Service ("USMS") on April 13, 2015—seven years and two months (2,616 days) later.  Wade now moves to dismiss the indictment on the ground that the delay between his indictment and arrest violated his constitutional right to a speedy trial.[3]

This case raises an interesting question about the scope of the federal government's obligation to seek to try a defendant on pending federal charges while that defendant is in state custody.  While some cases from outside this circuit suggest that the federal government acts negligently by awaiting termination of a prior state sentence before seeking to try such a defendant on federal charges, the Court ultimately finds these cases unpersuasive in the present circumstances. Wade neither clearly asserted his speedy trial right nor has he demonstrated prejudice from the period of delay.  Given the current state of the law, the motion is denied.

*Facts*

Wade was arrested on April 6, 1999, on a criminal complaint alleging conspiracy to distribute and possess with intent to distribute crack cocaine.  He pleaded guilty on June 29, 1999, and was sentenced to 57 months' imprisonment and three years of supervised release.[4]  Wade subsequently violated the terms of his supervised release and was sentenced on May 20, 2004, to

---

[2]

DI 2.

[3]

*See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .").

[4]

DI 24, no. 99-cr-649.

3

an additional ten months' imprisonment.[5]

Wade was admitted to the Bronx County Corrections Center, a halfway house, on or about January 12, 2005, to complete the last month of his federal sentence.[6]  On January 19, 2005, he left with a pass that required him to return during the afternoon.  Wade claims that he slipped on some ice while walking outside and cracked two of his teeth and that, while he was at the dentist, his mother called the halfway house and was informed that "it was too late for [Wade] to come back and that [he] would be charged with escape."[7]  Wade never returned to the halfway house.

Wade again was arrested on April 19, 2007 (two years after his departure from the halfway house) by the New York State Police for alleged participation in a drug conspiracy.[8]  He pleaded guilty and, on January 16, 2008, Wade was sentenced to a term of six to twelve years' incarceration in a state facility.[9]

On February 13, 2008, a federal grand jury indicted Wade on one count of escape. On February 15, 2008, the USMS lodged a detainer with the state facility that directed the warden to "advise [Wade] . . . that a Detainer has been filed . . . and that under the [Interstate Agreement on

---

[5]      DI 30, no. 99-cr-649.

[6]      Def.'s Mem. of Law [DI 10] at 3.

[7]      Aff. of Damon Wade [DI 9] ¶¶ 4-5.

[8]      *Id.* ¶ 6.

[9]      *Id.* ¶ 7; see also Aff. of Robert M. Baum [DI 8] Ex. D (State of New York Uniform Sentence & Commitment form).

4

Detainers Act he] has the right to demand speedy trial on the charges."[10]   The form contains a paragraph explaining the prisoner's rights and a signature line for the prisoner to acknowledge those rights, but the line on Wade's detainer is blank.   Wade states that he became aware of the warrant sometime in February 2008,[11] but his affirmation is silent as to whether anyone explained his right to demand a speedy trial or provided him with a copy of the detainer.   In any case, Wade came to believe that the state parole board denied him parole in 2012 due to the pending federal charges, although he alleges no facts substantiating that assertion.[12]

On June 26, 2012, Wade wrote to the Clerk for the Southern District.   Wade's letter explained that he did not return to the halfway house in 2005 because of his emergency trip to the dentist and asserted that he "couldn't have escaped cause [he] was out on a 5 hour pass."[13]   Wade requested that the Clerk "get this escape warrant vacated" or "get this issue taken care of or if not . . . send the paperwork to the people who can vacate this warrant."[14]   The *pro se* office mailed Wade a *habeas corpus* form.[15]   Nothing else appears to have occurred.

Wade was released from state custody on April 13, 2015, and immediately taken into

---

[10]

Gov't Mem. in Opp. to Wade's Motion [DI 13] at 3; *see also* DI 13-2 (a copy of the detainer).

[11]

DI 9 ¶ 8.

[12]

*Id.* ¶ 9.

[13]

Ltr. from Wade to Clerk of Ct. (June 26, 2012) [DI 8 Ex. G].

[14]

*Id.*

[15]

DI 8 ¶ 17.

federal custody.[16]  He was arraigned on the 2008 escape charge the following day.


*Discussion*

"While the objects of the Speedy Trial Clause are clear, its meaning is not.  Everyone doubtless has his or her own idea of what constitutes 'speedy,' but the Sixth Amendment does not define the term.  Accordingly, as the Supreme Court has written, 'any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case.'"[17]

A court's speedy trial inquiry is governed by the four-factor test established by the Supreme Court in *Barker v. Wingo*.[18]  These include "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant."[19]  The Second Circuit has stated that while a court's application of these factors is reviewed for abuse of discretion,[20] in the speedy trial context "a district court is in no better position than a reviewing court to undertake the required balancing."[21]

---

[16]
  Wade's release resulted from a grant of parole "at his conditional release date," which was the "date when his sentence, with good time, would have expired."  *Id.* ¶ 18.

[17]
  *United States v. Ghailani*, 751 F. Supp. 2d 515, 528 (S.D.N.Y. 2010), *aff'd*, 733 F.3d 29 (2d Cir. 2013) (quoting *Barker v. Wingo*, 407 U.S. 514, 522 (1972)).

[18]
  407 U.S. 514.

[19]
  *Id.* at 530.

[20]
  *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012).

[21]
  *Ghailani*, 733 F.3d at 44.

A.    *Length of Delay*

Courts will consider the other three *Barker* factors only "when the defendant makes a showing that 'that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."[22]  The Supreme Court has characterized delays of more than one year as "presumptively prejudicial" and has called a delay of 8.5 years "extraordinary."[23]  The government concedes that the lengthy delay here justifies further inquiry.[24]

B.    *Reason for the Delay*

Reasons for delay in prosecution fall along a spectrum, with "diligent prosecution" at one end and "bad-faith delay" designed to gain a tactical advantage at the other.[25]  The mine run of cases involves conduct between these two extremes, which is to say instances of "official negligence" neither "compelling relief in every case" nor "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him."[26]

Wade characterizes the government's conduct in waiting to prosecute him until his release from state custody as negligence that ought to weigh in favor of granting relief.[27]  The

---

[22]    *Id.* at 43 (quoting *Doggett v. United States*, 505 U.S. 647, 651-52  (1992)).

[23]    *Doggett*, 505 U.S. at 652 & n.1.

[24]    DI 13 at 5.

[25]    *Doggett*, 505 U.S. at 656.

[26]    *Id.* at 657.

[27]    DI 10 at 7-8.

government disputes this.  It contends that it is normal practice "to wait for a defendant to finish serving a sentence in another jurisdiction before bringing that person to face a federal charge."[28] The government asserts it certainly never acted in bad faith.

Wade contests the government's premise that waiting to prosecute a federal offense until after termination of a state sentence is proper.  His strongest authority is a Ninth Circuit case, *United States v. Geelan*,[29] which stated that "[t]he duty owed to a state or federal defendant [with respect to speedy trial rights] is not less because he is in the custody of another jurisdiction."[30]

In some ways *Geelan* is apposite.  The defendant there robbed a bank, was arrested by state authorities in Arizona, was indicted by a federal grand jury and had a federal detainer lodged against him, and then was adjudicated incompetent to stand trial by Arizona authorities and committed to a state mental institution.  When the defendant was determined to have regained competency over four years later, the state charges were dismissed and he was prosecuted on the federal charges.  The defendant then sought dismissal of the federal case on speedy trial grounds.[31]

The Ninth Circuit ultimately ruled for the defendant notwithstanding that he asserted his right to a speedy trial only after he was taken into federal custody following his confinement in the state mental institution.  It discounted Geelan's failure to assert his right to a speedy trial on the ground that "he was an adjudicated incompetent and could not knowingly and intelligently waive

---

[28]  DI 13 at 6.

[29]  520 F.2d 585 (9th Cir. 1975).

[30]  *Id.* at 588.

[31]  *Id.* at 587.

any right."[32]  It then faulted the United States Attorney's Office for failing to keep abreast of Geelan's mental status while he was in state custody,[33] citing the Supreme Court's decision in *Smith v. Hooey*[34] for the proposition that "[a] state is required to make a diligent, good-faith effort to bring a defendant to trial even though he is in a federal prison."[35]  The court then concluded that Geelan's speedy trial right had been violated because his primary defense to the pending federal charge probably would have been insanity, and the passage of time had made the proof of his mental state at the time of the crime more difficult.[36]  But *Geelan* is not helpful to Wade given the facts of this case.

As an initial matter, Wade does not claim that he was mentally incompetent.  Indeed, he admits that he was aware of the escape charge by early 2008.  The record before the Court contains no excuse comparable to Geelan's for Wade's failure to demand a trial on the federal escape charge for years during which he remained to state custody.

This view of the matter draws strength from *Smith v. Hooey* and the Ninth Circuit's reliance upon it in *Geelan.  Smith* involved a prisoner who remained in federal custody for six years during which the State of Texas ignored his repeated requests to be brought to trial on an

---

[32]

    *Id.* at 587-88.

[33]

    *Id.* at 588-89.

[34]

    393 U.S. 374 (1969).

[35]

    *Geelan*, 520 F.2d at 588.

[36]

    *Id.* at 589.

9

outstanding state charge.[37]  The Supreme Court there rejected the argument propounded by Texas that federalism concerns and respect for equal sovereigns barred it from seeking to try a defendant in federal custody even when that defendant vociferously and repeatedly requested to be tried as quickly as possible.[38]  Thus, the Supreme Court, as it made clear in *Barker,* attaches significant weight in the balance of interests that is dispositive of speedy trial claims to a defendant's assertion or failure to assert his speedy trial right with respect to an outstanding charge.  And the Ninth Circuit implicitly gave such weight in excusing Geelan's protracted failure to assert that right on the extraordinary circumstance of his mental incompetency.

Wade nonetheless wants the Court to adopt a stricter rule.  He cites several cases in which courts have stated that the federal government *necessarily* acts negligently when it does not seek to bring a defendant incarcerated in another jurisdiction to trial on pending federal charges in a diligent manner.  In *United States v. Driver*,[39] the Fifth Circuit stated in *dicta* that "the fact that one sovereign authority has custody of a defendant does not obviate the requirement that another sovereign authority seek a speedy trial of the defendant on an offense to its own laws."[40]  Two

---

[37]

393 U.S. at 375-76.

[38]

*Id.* at 377 ("[T]he Texas Supreme Court has held that because petitioner is, in fact, confined in a federal prison, the State is totally absolved from any duty at all under the constitutional guarantee.  We cannot agree.").

[39]

462 F.2d 808 (5th Cir. 1972).

[40]

*Id.* at 810 n.1.

district court decisions, *United States v. Barraza-Lopez*[41] and *United States v. Packer*,[42] have gone further. *Barrara-Lopez* stated that "[w]here a defendant is serving a sentence in a different jurisdiction, the government has an obligation to bring him to trial on pending charges [and] cannot simply wait until the completion of the other sentence."[43] *Packer* likewise stated that "the Government's duty to make a good-faith effort [to try a defendant incarcerated in another jurisdiction] does not require any demand by a defendant."[44]

Insofar as Wade asks the Court to adopt the view expressed in these cases—i.e., that the federal government always acts negligently (or always is culpable under the second *Barker* factor) when it awaits resolution of a state sentence before bringing a defendant to trial on pending federal charges—the Court declines to do so.

In the first place, the Second Circuit has not articulated anything like the proposed *per se* rule that these cases have adopted. More fundamentally, these cases read *Smith* far too broadly. In the Court's view, *Smith* stands for the proposition that it is inappropriate to delay the prosecution of a person incarcerated in one jurisdiction on charges in a second jurisdiction *when the person has asserted his or her speedy trial right and been ignored.* In this way, *Smith* sought to correct the erroneous notion, expressed by Texas in that case, that "doctrinaire concepts of 'power' and 'authority'" prevent one sovereign from seeking to try a defendant while in the custody of

---

[41]

No. 04-cr-1962-L, 2009 WL 5091913 (S.D. Cal. Dec. 17, 2009), *aff'd on other grounds*, 659 F.3d 1216 (9th Cir. 2011).

[42]

857 F. Supp. 726 (C.D. Cal. 1994).

[43]

2009 WL 5091913, at *4.

[44]

857 F. Supp. at 729.

another.[45]  This is very different from a conclusion that one sovereign's decision to await resolution of another sovereign's criminal sentence before bringing a prisoner to trial *always* amounts to negligence that ought to count against that sovereign in conducting a *Barker* analysis.  Indeed, in this case, the government did not fail to act or act in bad faith.[46]  Rather, it lodged a detainer with the New York state authorities and immediately apprehended Wade upon his release from state custody.

In all the circumstances, the Court concludes that the second *Barker* factor does not weigh definitively in favor of either the government or Wade, although the government's failure to move forward with its prosecution (beyond lodging the detainer) ought to be weighed against it, however slightly, in the *Barker* balance.[47]

C.    *Wade's Alleged Assertion of His Speedy Trial Right*

Wade acknowledges that he became aware of his pending federal escape charge by February 2008.[48]  He waited over four years before writing the Clerk.  The government contends that this counts heavily against Wade, as he opportunistically "only sought to address his federal charge

---

[45]

393 U.S. at 381.

[46]

See *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (contrasting delay resulting from "institutional dysfunction" with "deliberate wrongdoing or bad faith.").

[47]

See *Ghailani*, 751 F. Supp. 2d at 537 ("*Barker* teaches that even 'neutral reason[s]' for delay such as 'negligence or overcrowded courts should be weighted' against the government, albeit 'less heavily' than 'deliberate attempt[s] to hamper the defense,' 'since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.'" (citing *Barker*, 407 U.S. at 531)).

[48]

DI 9 ¶ 8.

when he perceived it as benefitting his eligibility for parole on his state sentence."[49]

Wade responds that he never graduated from high school (though he does have a GED) and that, as someone unschooled in the procedural minutiae of the justice system, his request to have the warrant vacated should be "deemed as a request to appear before the Court on the charge of escape."[50]

The Court is not persuaded. Wade's letter to the Clerk was not a request to be tried but an argument for dismissing or vacating the escape charges. Moreover, while Wade asserts in his affirmation that his letter was a request either "for the warrant [to be] vacated or that [he] be brought to Court,"[51] the letter in fact does not include the second request.[52] Thus, this case is quite unlike *Smith v. Hooey*,[53] the doctrinal basis of *Geelan* and the other cases upon which Wade relies.

The third *Barker* factor therefore weighs against dismissing the indictment.

### D.    *Prejudice*

Wade fails also to demonstrate prejudice. He argues that he will have difficulty proving his reasons for failing to return to the halfway house on the day in question because his

---

[49]

DI 13 at 9 (citing *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (finding that defendant asserted his speedy trial right "opportunistically . . . when it suited his interests but not when the delay benefitted him.")).

[50]

DI 14 at 7.

[51]

DI 9 ¶ 10.

[52]

*See* DI 8 Ex. G.

[53]

393 U.S. 374.

mother, who is now 65, "cannot recall many of the other details of this event" due to "the passage of time" and "advancing age."[54]  This argument is problematic.

As an initial matter, Wade has not submitted an affidavit from his mother attesting to her poor memory.

Secondly, Wade has not explained adequately why his mother's poor memory would impair his ability to defend himself at trial.  In order to convict, the government would have to prove at trial that Wade "(1) was in custody in a facility in which he was confined by direction of the Attorney General as the result of a conviction, (2) failed to report as ordered, and (3) knew he did not have permission to leave federal custody."[55]  Furthermore, the parties agree that escape is a continuing offense and that "an escapee can be held liable for failure to return to custody as well as for his initial departure."[56]

This is where Wade's argument falters.  At most, Wade's mother is said to have been able to testify to the facts of Wade's injury and to her alleged conversation with someone at the halfway house who purportedly told her that Wade's failure to return on time would result in an escape charge.  Wade, however, does not need his mother's testimony to prove that he was unable on the day that he first left the facility to return on time from his day pass.  He of course may testify to his condition at that time.  There presumably are records at the dental office where he was treated.  Indeed, it is entirely possible that the professional who treated him can be located and testify to

---

[54]  DI 10 at 11.

[55]  DI 13 at 10 (citing MODERN FED. JURY INSTR. 28.01).

[56]  *United States v. Bailey*, 444 U.S. 394, 413 (1980); *see also* Ltr. from R. Baum to Ct. (July 22, 2015) [DI 16]; Ltr. from Gov't to Ct. (July 21, 2015) [DI 15].

Wade's condition.

Likewise, there are other sources of proof as to whether Wade "knowingly" failed to return on the date of his departure.  Wade suggests that his mother, had the case been prosecuted earlier, could have testified that she had been told in substance that it was too late for Wade to return and that he would be charged with escape.  The point of that testimony, as the Court understands it, would be to show that Wade's failure to return was not "knowing" because he had been told that he already had escaped.[57]  But that testimony would not be offered for the truth of the alleged statement by the halfway house staffer to Wade's mother.  It would be offered to prove Wade's state of mind. Assuming the relevancy and materiality of the evidence of the mother's alleged statement to Wade, *Wade* therefore could testify, over hearsay objection, to what his mother had told him.

In the last analysis, however, none of the foregoing ultimately matters.  Regardless of whether Wade knew that he was required to return to the halfway house on the day he left it, and regardless of whether he was physically capable of doing so that day, his concession that escape is a continuing crime and that "an escapee can be held liable for failure to return to custody as well as for his initial departure"[58] is fatal to Wade's prejudice argument.

When Wade walked out the door on January 19, 2005, he knew that he still had time to serve on his federal sentence and that he was obliged to return to the halfway house.  Regardless of whether the accident rendered him physically able to return that day, and regardless of whether his mother had told him in essence that it was too late to go back to the halfway house, the government is entitled to an opportunity to prove that Wade's failure to return to complete his

---

[57]     *See* DI 14 at 4.

[58]     *Bailey*, 444 U.S. at 413.

federal sentence during the more than two years prior to his state arrest during which he remained at large was culpable.  No loss of memory by his mother as to the details of what transpired on January 19, 2005, could materially prejudice the defense of this case.[59]

E.      *Balancing the Factors*

The *Barker* factors weigh against dismissing the indictment in this case.  To be sure, the delay here was uncommonly long and merits further scrutiny of the other *Barker* factors.  But the balance counsels against the relief that Wade seeks.  The second factor cuts in favor of Wade, but only marginally in view of the fact that the delay of the escape prosecution until Wade completed his state sentence was relatively benign and certainly not a product of a desire to achieve a tactical advantage from the delay.  With respect to the third, Wade's letter to the Clerk, fairly read, was not an assertion of his speedy trial right.  As to the fourth factor, there is no indication that the delay in this case will inhibit Wade's defense.

Nor would dismissal further the purposes of the Speedy Trial Clause itself.  It serves as an "important safeguard [not only] to prevent undue and oppressive incarceration prior to trial, [but also] to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself."[60]  Wade experienced no undue incarceration before facing trial on his federal charges because he was in

---

[59]

The Court recognizes *Doggett*'s teaching that "affirmative proof of particularized prejudice is not essential to every speedy trial claim."  505 U.S. 647 at 655.  The Court of course adheres to *Doggett*.  It holds only that the *Barker* factors, properly weighed, do not compel dismissal of the indictment in the present circumstances.

[60]

*United States v. Ewell*, 383 U.S. 116, 120 (1966).

16

custody in consequence of a duly imposed state sentence.[61]   Nor has he made any allegations

regarding anxiety or concern with respect to the escape charge.  Wade's counsel conceded these two

points at oral argument.[62]  Finally, as the Court has explained, Wade has failed to demonstrate any

way in which the delay in this case will impair his ability to defend himself at trial.

*Conclusion*

Accordingly, the motion to dismiss the indictment [DI 7] is denied.

SO ORDERED.

Dated:          July 22, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[61]
*See Ghailani*, 751 F. Supp. 2d at 531 (under the Speedy Trial Clause, "relief is appropriate only if there is a causal relationship between the claimed injury and the conduct complained of—in this context, a causal connection between the particular alleged prejudice and the delay in question.").  *Smith* recognized "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving."  393 U.S. at 378.  But Wade has made no such argument here.

[62]
Tr. of Oral Arg. (July 21, 2015) at 18:24-19:1.